UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                  :

IN RE VEECO INSTRUMENTS INC.       :    No. 7:05-MD-01695-CM
SECURITIES LITIGATION             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                  :

THIS DOCUMENT RELATES TO:      :
ALL ACTIONS                 :
                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035

Counsel for Defendants Veeco Instruments Inc., Edward
H. Braun, John F. Rein, Jr. and John P. Kiernan


January 10, 2006

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 2

I.  DEFENDANTS' STATEMENTS CONCERNING TURBODISC ARE
    NOT ACTIONABLE UNDER RULE 10B-5 ......................................................... 2

II. PLAINTIFF HAS NOT ADEQUATELY ALLEGED FRAUDULENT
    INTENT WITH RESPECT TO ANY OF THE ALLEGED ACCOUNTING
    ERRORS ............................................................................................................... 4

    A.  Overstatement of Inventory ......................................................................... 4

    B.  Sanan Contract ............................................................................................ 5

    C.  Alleged Understatement of $250,000 in Warranty Reserves ....................... 8

    D.  Recognition of Transitional Services Agreement Revenue .......................... 9

CONCLUSION ............................................................................................................... 11

## TABLE OF AUTHORITIES

### Cases

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991)........................................5

*Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627 (2005) ................................................9

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) .......................................................9

*Gavish v. Revlon, Inc.*, No. 00 Civ. 7291 (SHS), 2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004) .............3

*Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999)......................................................8

*In re Am. Banknote Holographics, Inc. Secs. Litig.*, 93 F. Supp. 2d 424 (S.D.N.Y. 2000)....................6, 7

*In re Am. Express Co. Shareholder Litig.*, 840 F. Supp. 260 (S.D.N.Y. 1993) .........................................3

*In re BISYS Secs. Litig.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005) ....................................................6

*In re Bristol-Myers Squibb Secs. Litig.*, 312 F. Supp. 2d 549 (S.D.N.Y. 2004) .........................................9

*In re Corning Secs. Litig.*, No. 01-CV-6580-CJS, 2004 WL 1056063 (W.D.N.Y. Apr. 9, 2004).............5

*In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005)...............................................................10

*In re Fritz Companies Secs. Litig.*, 282 F. Supp. 2d 1105 (N.D. Cal. 2003) ..............................................3

*In re Galileo Corp. Shareholders Litig.*, 127 F. Supp. 2d 251 (D. Mass. 2001) ....................................8, 9

*In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005) ...............................................................................................................7

*In re IPO Secs. Litig.*, No. MDL 1554 (SAS), 2005 WL 1162445 (S.D.N.Y. May 6, 2005) .................10

*In re MicroStrategy, Inc. Secs. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000) .............................................7

*In re MSC Indus. Direct Co., Secs. Litig.*, 283 F. Supp. 2d 838 (E.D.N.Y. 2003) ....................................6

*In re Retek Inc. Secs.*, No. CIV 02-4209(JRT/SRN), 2005 WL 3059566 (D. Minn. Oct. 21, 2005).......10

*In re Siebel Sys., Inc. Secs. Litig.*, No. C 04-0983 CRB, 2005 WL 3555718 (N.D. Cal. Dec. 28, 2005) ...............................................................................................................3, 6

*In re Skechers U.S.A., Inc. Secs. Litig.*, No. CV 03-02094 PA, 2004 WL 1080174 (C.D. Cal. May 7, 2004) ...............................................................................................................6

*Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005) ..............................................10

*Lewin v. Lipper Convertibles, L.P.*, No. 03 CV 1117RO, 2004 WL 1077930 (S.D.N.Y. May 13, 2004) ..................................................................................................................................................7

*Lexar Media Inc. Secs. Litig.*, No. C-04-2013 SC, 2005 WL 1566534 (N.D. Cal. July 5, 2005)..............5

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ....................................................................6

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ......................................................................................4, 5

*Polycast Tech. Corp. v. Uniroyal, Inc.*, No. 87 CIV. 3297 (JMW), 1988 WL 96586 (S.D.N.Y. Aug. 31, 1998) ..................................................................................................................................................6

*Remec Inc. Secs. Litig.*, 388 F. Supp. 2d 1170 (S.D. Cal. 2005) ................................................................5

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996) ..................................................................................................................................................3

**Statutes**

15 U.S.C. § 78u-5.........................................................................................................................................3

**Rules**

Fed. R. Civ. P. 9(b) ......................................................................................................................................6

## PRELIMINARY STATEMENT

Plaintiff's opposition has a number of overriding defects. It does not focus carefully – as it must – on what the Amended Complaint actually alleges, and more important, on what it does not allege. Plaintiff relies on a few egregious cases, based on far different facts, and does not deal with the vast array of precedent from the Second Circuit and elsewhere that compels dismissal of its claims.

Plaintiff confuses the allegations that involve forward-looking statements with allegations of incorrect numbers in the financial statements or opinions. The former are shielded by the PSLRA and the bespeaks caution doctrine while the latter fail for lack of scienter and materiality. On "numbers" issues, such as the allegedly inflated inventory, the so-called fictitious signoffs relating to the Sanan Group contract, and the alleged failure to have a higher warranty reserve before the fourth quarter of 2004, the Amended Complaint fails to allege scienter (i.e., fraudulent intent) with the required particularity. The essence of Plaintiff's position is that experienced people made or approved the alleged misstatements involved, and therefore they must have been intentional. This syllogism cannot be squared with either PSLRA or Rule 9(b).

There are numerous other fatal flaws. Much of the Amended Complaint is filled with non-actionable allegations of managerial mistakes involving the purchase and integration of TurboDisc and resulting procurement and machine development policies. Finally, Plaintiff's claims relating to the Transitional Services Agreement with Emcore are based on the improbable theory that Defendants hid results that were bound to come clear in several months, and it fails to allege loss causation under the Supreme Court's decision in *Dura Pharmaceuticals*.

## ARGUMENT

### I.    DEFENDANTS' STATEMENTS CONCERNING TURBODISC ARE NOT ACTIONABLE UNDER RULE 10B-5

Plaintiff erroneously asserts that Veeco's optimistic statements about the TurboDisc acquisition were "representations concerning the current or historical performance of Veeco and TurboDisc." Opp. at 9. To the contrary, the challenged statements in the Amended Complaint are plainly forward-looking:

- *Statement 1*: "We believe that Emcore's MOCVD business will be accretive to Veeco on a cash basis by the second quarter of 2004." Compl. ¶ 79; *see also id.* ¶ 81.

- *Statement 2*: "[W]e *see* synergies, further synergies of about $4m a year that are cost savings from operating spending and who have made some significant spending reductions themselves, but I think the advantage of being part of Veeco equipment company allows some additional savings." *Id.* ¶¶ 80-81.

- *Statement 3*: "The model that we would put together, Jack, I think, has a model, we think that MOCVD should have a target gross margin of 46% and should have a target operating profit of 15% . . . ." *Id.* ¶ 80.

- *Statement 4*: Veeco "will end the year with about a 45% gross margin." *Id.* ¶ 100.

- *Statement 5*: "[W]e still expect 2004 to be a strong growth year for Veeco compared to 2003. Veeco remains well positioned to provide leadership technologies for growth applications in semiconductor." *Id.* ¶ 103.

Statements 1-3 all were made by Ed Braun on November 3, 2003, the day that Veeco acquired TurboDisc, and concern *expected* accretiveness and synergies resulting from the TurboDisc acquisition and *target* gross margins for TurboDisc. Statements 4 and 5 were made at a September 8, 2004 technology conference and in an October 12, 2004 press release, respectively, several months prior to the end of Veeco's fiscal year, and concern Veeco's *expected* year-end gross margin and growth. All of these statements clearly are forward-looking, immaterial, and each was accompanied by meaningful cautionary language. *See* Declaration of Robert F. Serio ("Serio Decl.") Ex. A at 3, Ex. B at 1; Declaration of J. Ross Wallin ("Wallin Decl.") Ex. A at 3, Ex. B at 44. Thus, they are covered by the

PSLRA safe harbor and the bespeaks caution doctrine. *See* 15 U.S.C. § 78u-5(c); Defs. Mem. at 7-9.

Plaintiff's characterization of these statements as relating to the "current or historical performance of

Veeco and TurboDisc" (*see* Opp. at 9) defies English grammar, not to mention common sense. *See*

*Gavish v. Revlon, Inc.*, No. 00 Civ. 7291 (SHS), 2004 WL 2210269, at *21-24 (S.D.N.Y. Sept. 30,

2004) (dismissing complaint as a matter of law).

Moreover, statements purportedly relied on by Plaintiff, such as, "[TurboDisc] is a recognized

industry leader" (Compl. ¶¶ 78, 82), "[t]he growth of this newly acquired [TurboDisc] product line has

surpassed our initial expectations" (*id.* ¶ 84), and Veeco is having "a strong revenue and earnings

recovery year" (*id.* ¶ 100) are statements of opinion that are simply too general to be material. *See, e.g.*,

*Gavish*, 2004 WL 2210269, at *23; *In re Siebel Sys., Inc. Secs. Litig.*, No. C 04-0983 CRB, 2005 WL

3555718, at *3, *8, *13 (N.D. Cal. Dec. 28, 2005) (dismissing complaint as a matter of law).[1] In any

event, no facts are alleged that support the conclusion that any of these statements was false or made

with fraudulent intent.[2]

---

[1] Veeco was not required, as a result of prior statements concerning TurboDisc and its products, to disclose its allegedly unwise decisions to build generic platforms for MOCVD reactors and manufacture certain components in-house. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 810 (2d Cir. 1996). Furthermore, failure to disclose alleged corporate mismanagement cannot support a securities claim. Defs. Mem. at 10-12. Plaintiff's allegations relating to purportedly deficient accounting controls are similarly lacking. *See In re Fritz Companies Secs. Litig.*, 282 F. Supp. 2d 1105, 1113 (N.D. Cal. 2003) (rejecting virtually identical allegations relating to inadequate accounting controls where, as here, among other defects, the complaint alleged "defendants' knowledge [of inadequate control] with no detail whatsoever"); *see also In re Am. Express Co. Shareholder Litig.*, 840 F. Supp. 260, 268 (S.D.N.Y. 1993).

[2] The remaining challenged statements concerning TurboDisc (*see* Compl. ¶¶ 82, 84, 87, 88, 90, 93, 95, 97, 98, 99, 106, 107, 110, 111, 113, 115, 116) either are contained in, repeat financial information contained in, or relate to statements made in Veeco's original 10-Qs for the first three quarters of 2004. These statements are not actionable because Plaintiff has failed to allege that the statements were made with the requisite fraudulent intent. *See Section II, infra.*

## II.   PLAINTIFF HAS NOT ADEQUATELY ALLEGED FRAUDULENT INTENT WITH RESPECT TO ANY OF THE ALLEGED ACCOUNTING ERRORS

### A.   Overstatement of Inventory

Although Plaintiff persists in characterizing Veeco's $5.562 million inventory adjustment in the restatement as a "writedown of non-saleable inventory" (Opp. at 19), Veeco never stated either in the restatement or anywhere else that it was taking an inventory adjustment to reflect a decrease in inventory value (as opposed to an increase in the cost basis of its inventory). *See* Serio Decl. Ex. D at 44 n.1, 45 n.2-3 (describing restated cost of sales as resulting partially from "adjustments" to inventory). Plaintiff does not cite any documentary evidence or allege any particularized facts to support its assertion that inventory was worthless, or that Defendants knew that it was worthless during the Class Period.

Even accepting as true Plaintiff's allegation that an inventory "writedown" was taken, Plaintiff's claim still fails. Instead of addressing the deficiencies in the Amended Complaint highlighted by Defendants in their opening brief (*see* Defs. Mem. at 16-17), Plaintiff relies exclusively on the Second Circuit's decision in *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) (*see* Opp. at 19-20), which turned on particularized allegations relating to an egregious "Box and Hold" scheme, whereby a substantial and growing quantity of out-of-date-inventory was stored in several warehouses without being marked down. *Id.* at 304. The *Novak* plaintiffs further alleged defendants received "reports" showing that the Box and Hold inventory was "*several years old*" and was "thus unlikely to be sold at full price, if at all," and that such inventory grew to account for as much as *34 percent* of the defendants' total inventory. *Id.* (emphasis added). The *Novak* plaintiffs also alleged that defendants had "knowledge of the true reasons for rising inventory levels," "discussed the need to mark down inventory but refused to do so because that would damage the Company's financial prospects," and "made repeated statements to the investment community either offering false reassurances that inventory was under control or

giving false explanations for its growth." *Id.* at 311-12.[3]  The *Novak* plaintiffs offered documentary evidence that the Company's inventory was of limited value during the class period  *Id.* at 313.

Unlike *Novak*, nothing is alleged here to show that Defendants believed, discussed, or ever admitted that they had several million dollars of inventory during the first three quarters of 2004 that was worthless or would have to be sold below cost. *See* Defs. Mem. at 16-17; *Remec Inc. Secs. Litig.*, 388 F. Supp. 2d 1170, 1176-77 (S.D. Cal. 2005) (dismissing inventory allegations for failure to allege facts showing worthlessness); *In re Corning Secs. Litig.*, No. 01-CV-6580-CJS, 2004 WL 1056063, at *25 (W.D.N.Y. Apr. 9, 2004) (same).  Plaintiff does not allege any affirmative misleading statements concerning inventory levels during the Class Period.  All it says is that there was a known inventory build-up in 2004 (*see* Opp. Mem. at 19), which begs the question of whether Defendants knew at the time that a writedown was necessary because of a decrease in inventory value. *See* Defs. Mem. at 17.[4]

## B.    Sanan Contract

First, contrary to Plaintiff's suggestion (Opp. at 15), Defendants did *not* concede in the restatement, or in its moving brief, that Veeco improperly recognized *any* revenue relating to the Sanan Group.[5]  Veeco has never acknowledged any improper revenue recognition relating to this customer.

---

[3]  Contrary to what Plaintiff states (*see* Opp. at 19), the Second Circuit inferred fraudulent intent in *Novak* from the "specific facts" alleged in the complaint regarding defendants' actual knowledge, and not the mere fact of the inventory write-down. *Novak*, 216 F.3d at 312-13.

[4]  Plaintiff suggests that the alleged increase in inventory levels was attributable not to fraud, as alleged in *Novak*, but rather to a business decision to build MOCVD reactors in order to "'hit the market while it was hot' with large quantities of reactors." *See* Opp. at 5; *Lexar Media Inc. Secs. Litig.*, No. C-04-2013 SC, 2005 WL 1566534, at *5 (N.D. Cal. July 5, 2005).

[5]  Plaintiff does not dispute that the contract attached as Exhibit I to the Serio Declaration governed Veeco's sales to the Sanan Group.  Plaintiff likewise does not dispute that the Sanan contract is integral to its claims.  Thus, it is entirely proper for this Court to consider the Sanan contract on a motion to dismiss. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

Second, Plaintiff by omission concedes that its purported "direct evidence" of conscious misbehavior or recklessness relating to the Sanan Group contract is insufficient. Its reliance (*see* Opp. at 16) on Defendant Braun's "frequent" conversations with CW3 concerning "various items of revenue and expense," biweekly teleconferences, and miscellaneous "one on one discussions" with CW3 are all obviously non-probative of whether Defendant Braun (or any of the other Defendants) was actually aware of, or recklessly ignored, "fictitious sign-offs" relating to the Sanan Group. *See Polycast Tech. Corp. v. Uniroyal, Inc.*, No. 87 CIV. 3297 (JMW), 1988 WL 96586, at *5 (S.D.N.Y. Aug. 31, 1998); *In re Skechers U.S.A., Inc. Secs. Litig.*, No. CV 03-02094 PA, 2004 WL 1080174, at *6 (C.D. Cal. May 7, 2004) (conclusory allegations by a confidential witness did not satisfy the pleading requirements of the PSLRA). Moreover, as noted in Defendants' opening brief and uncontradicted by Plaintiff, there are no facts alleged supporting CW3's conclusory assertions of knowledge. *See* Defs. Mem. at 18-19; *In re MSC Indus. Direct Co., Secs. Litig.*, 283 F. Supp. 2d 838, 846-47 (E.D.N.Y. 2003) (dismissal for failure to allege confidential witness had first-hand knowledge of matters at issue). In fact, the Sanan Group contract explicitly *contradicts* one of CW3's main assertions, and calls into question whether CW3 had any knowledge relating to the Sanan Group. *See* Defs. Mem. at 18; *In re Siebel*, 2005 WL 3555718, at *9 (dismissing complaint and rejecting allegations of confidential witness for lack of "knowledge").

Plaintiff cannot save itself by relying on group pleading. Neither *In re Am. Banknote Holographics, Inc. Secs. Litig.*, 93 F. Supp. 2d 424, 442 (S.D.N.Y. 2000) (McMahon, J.) (hereinafter *In re ABN*), nor any other court in this District following PSLRA, has permitted group pleading of scienter. *See In re BISYS Secs. Litig.*, 397 F. Supp. 2d 430, 441 (S.D.N.Y. 2005) ("In order to satisfy the PSLRA and Rule 9(b), plaintiffs must allege with particularity that *each* of the defendants acted with the requisite *scienter*.") (emphasis added). Plaintiff must allege that each Defendant "*personally* knew of, or participated in, the [alleged] fraud." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175

(2d Cir. 1993). In *In re ABN*, this Court carefully reviewed the evidence as to each high-level executive defendant before deciding that scienter was adequately pleaded in an egregious case where "revenues were inflated by over 50%" and the executives "were present at each of the company's quarterly sales meetings . . . [and] had reason to know what the actual sales figures and revenues . . . were . . . ." 93 F. Supp. 2d at 446. By contrast, the "fictitious sign-off" allegations are based solely on the vague, conclusory and patently inaccurate assertions of CW3 with respect to a contract which – again unlike *In re ABN* – was never mentioned in any restatement. *See* Defs. Mem. at 19.

Lacking "direct evidence," Plaintiff relies on a grab bag of rhetoric that adds nothing. That there were "GAAP violations" and violations of internal policies (Opp. at 14-15) presupposes that Defendants knew of "fictitious sign-offs" – and there are no particularized facts pleaded that support the conclusory "group" allegation that they did. In any event, a "GAAP violation" means little. *See* Defs. Mem. at 12.[6]

Finally, the Sanan contract is *not* so significant as to make "less credible the inference that Defendants were not aware of . . . the accounting irregularities relating" to the contract. Opp. at 15. *In re MicroStrategy, Inc. Secs. Litig.*, 115 F. Supp. 2d 620, 639 (E.D. Va. 2000) – the case on which

_____

[6] Further, as the cases cited by Plaintiff hold, alleged GAAP violations in this case were not "repeated and pervasive" enough to support an inference of fraudulent intent. *See* Opp. at 14 (citing *Lewin v. Lipper Convertibles, L.P.*, No. 03 CV 1117RO, 2004 WL 1077930, at *2 (S.D.N.Y. May 13, 2004)). The GAAP violations in *Lewin* (a case on which Plaintiff relies) had been occurring for *at least seven years*, and involved an overstatement in defendant partnership's value of 40 percent. *Lewin*, 2004 WL 1077930, at *1. Here, errors occurred for, at most, *three quarters*, and resulted in *zero* overstatements of revenue during any annual period and a maximum overstatement of revenue by *4.0 percent* in a single quarter. *Compare In re ABN*, 93 F. Supp. 2d at 447. Moreover, errors that involve premature recognition of revenue are *not*, as Plaintiff contends, "especially indicative of conscious misbehavior or recklessness." Opp. at 14. Plaintiff's only support for this contention is a decision involving an inventory parking scheme that was far more egregious than any alleged conduct in the Amended Complaint. *See In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2005 WL 2277476, at *21 (E.D.N.Y. Sept. 19, 2005).

Plaintiff relies (*see* Opp. at 15) – involved contracts accounting for 25 percent of the company's revenue and that were described as "*three of the most important contracts in its corporate life.*" (emphasis added). Here, the alleged premature recognition of revenue resulted in overstatements of revenue of just 4.0 percent and 3.7 percent in the first two quarters of 2004, respectively, and a 5.4 percent *understatement* of revenue in the third quarter (*see* Serio Decl. Ex. D at 44), and thus does not support a strong inference of scienter. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185, 206 (1st Cir. 1999).

### C.    Alleged Understatement of $250,000 in Warranty Reserves

Plaintiff unquestionably fails to plead facts – such as the expected cost of repairing or replacing defective products, or the expected timing of such measures – normally required for a claim based on insufficient warranty reserves. *See* Defs. Mem. at 19-22; *In re Galileo Corp. Shareholders Litig.*, 127 F. Supp. 2d 251, 268 (D. Mass. 2001). Plaintiff simply repeats the allegations in the Amended Complaint, and concludes *ipso facto* that those allegations establish Defendants' "actual knowledge" of the need to establish a warranty reserve. Compl. ¶¶ 62-74, 133; Opp. at 17-19.

The key point is that while management was allegedly aware of quality problems and an increase in warranty claims as early as mid-February 2004, there is no allegation that anyone at Veeco advocated an increase in warranty reserves at that time or decided to hide the issue by not increasing the reserve. The Amended Complaint merely states that CW3 *proposed* a $250,000 accrual at some unspecified point in time, and that Defendant Rein disagreed with CW3's proposed accrual – a far cry from an allegation that Rein believed that the accrual was genuinely required or that the existing warranty reserves at that time were insufficient.[7] Compl. ¶ 71. These allegations are simply not

---

[7] Plaintiff does not dispute that the setting of contingency reserves involves a considerable amount of business judgment. *See* Defs. Mem. at 20 n.19.

particularized enough to support an inference of fraudulent intent. *See In re Galileo*, 127 F. Supp. 2d at 268.

The alleged understatement of warranty reserves here – which amounted to less than 0.5% of Veeco's total cost of sales for the third quarter of 2004 and approximately 0.15% of Veeco's total costs for the nine months ended September 30, 2004 – was also immaterial. *See* Defs. Mem. at 21-22. Plaintiff's assertion that, by virtue of the restatement, Veeco conceded that every corrected error was material misstates the law. *See In re Bristol-Myers Squibb Secs. Litig.*, 312 F. Supp. 2d 549, 569 (S.D.N.Y. 2004) ("Plaintiffs may not bootstrap the Company's correction of certain known errors made in the application of GAAP . . . because in each such case the Company believed that the amount of any such error was not material to the Company's consolidated financial statement . . . . into conscious misbehavior or recklessness."); Accounting Principles Board Opinion No. 20, ¶ 38 ("materiality should be considered in relation to both the effects of each change separately and the combined effect of all changes").

Plaintiff's reliance (*see* Opp. at 18) on a "qualitative factors" analysis under *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 163 (2d Cir. 2000) is similarly misplaced. Unlike *Ganino*, the facts alleged here strongly suggest that Veeco did not understate warranty reserves by $250,000 in order to sustain an earnings trend or meet analyst expectations: Veeco originally reported a net gain after taxes of $1,581,000 for the second quarter of 2004, and a net loss after taxes of $1,455,000 for the next quarter – a pattern unaffected by a $250,000 accrual. *See* Serio Decl. Ex. D at 44. And the results initially reported for the third quarter of 2004 were below the guidance that Veeco provided to analysts in July 2004. *See id.*; Wallin Decl. Ex. C at 3-4.

**D.    <u>Recognition of Transitional Services Agreement Revenue</u>**

Following *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627 (2005), courts in this Circuit consistently have required plaintiffs to link their losses to some sort of corrective disclosure or event.

See, e.g., *In re IPO Secs. Litig.*, No. MDL 1554 (SAS), 2005 WL 1162445, at *3 (S.D.N.Y. May 6, 2005) ("[I]n material omission cases, a court cannot presume dissipation of the inflationary effect; a plaintiff must explicitly allege a disclosure or some other corrective event."); *cf. Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 174 (2d Cir. 2005). Plaintiff does not allege that any such corrective disclosure or event occurred with respect to the TSA "misstatement." [8]

Plaintiff's reliance on *In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005), and *In re Retek Inc. Secs.*, No. CIV 02-4209(JRT/SRN), 2005 WL 3059566 (D. Minn. Oct. 21, 2005) (*see* Opp. at 22), is misplaced, as both cases involved huge drops in the defendant companies' stock prices following the announcement of financial results that revealed their "true" financial conditions. Here, Plaintiff alleges that Veeco has never fully disclosed its true financials because its corrective disclosures never revealed the allegedly improper revenue recognition relating to the TSA. Compl. ¶ 56.[9]

---

[8] Plaintiff's opposition also includes new allegations (*see* Opp. at 21) relating to the TSA – namely that Veeco violated APB No. 29 by failing to disclose that it was providing "free" services to Emcore. The Amended Complaint makes no such allegation, and thus the Court should ignore it. This is just one example of Plaintiff's repeated attempts to cure defects in the Amended Complaint by introducing new allegations in its opposition brief. *See, e.g.*, Opp. at 5, 13.

[9] Plaintiff's attempt to analogize its TSA allegations to a Ponzi scheme (*see* Opp. at 21 n.14) is silly. Perpetrators of a Ponzi scheme personally benefit by raking cash into their pockets before the scheme collapses. Here, Plaintiff does not allege that Veeco management benefited in any concrete or personal way.

## CONCLUSION

For the reasons set forth in Defendants' initial memorandum and this memorandum, this Court should dismiss Plaintiff's Consolidated Amended Complaint with prejudice.

Dated:    January 10, 2006

Respectfully submitted,

By: _____

John A. Herfort (JH-1460)
Robert F. Serio (RS-2479)
J. Ross Wallin (JW-3911)

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166
Phone: (212) 351-4000
Fax: (212) 351-4035

Counsel for Defendants Veeco Instruments Inc., Edward
H. Braun, John F. Rein, Jr. and John P. Kiernan