**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re VEECO INSTRUMENTS, INC. SECURITIES LITIGATION | Case No.: 7:05-md-01695 (CM) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS CONCERNING VEECO'S INTERNAL INVESTIGATION**

# REDACTED

**(UNREDACTED VERSION FILED UNDER SEAL PURSUANT TO CONFIDENTIALITY ORDER DATED MAY 16, 2006)**

**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000

*Lead Counsel for Lead Plaintiff*
*Steelworkers Pension Trust and The Class*

August 28, 2006

## TABLE OF CONTENTS

A. The Requested Documents Are Not Protected by the Work Product Doctrine . . . . . . . . . 1

B. Defendants' Disclosures Have Waived Any Applicable Privilege . . . . . . . . . . . . . . . . . . 5

C. Defendants' Disclosures Have Waived Any Applicable Privilege . . . . . . . . . . . . . . . . . . 7

D. Defendants Have Not Defeated Plaintiffs' Substantial Need Arguments . . . . . . . . . . . . . 9

**A. The Requested Documents Are Not Protected by the Work Product Doctrine**

Defendants' primary argument in their response brief is that Plaintiffs "largely ignore the governing standard used in this Circuit for determining whether documents are prepared in 'anticipation of litigation.'" Defendants' Br. at 8. However, it is Defendants who "largely ignore" the facts surrounding, and the motivating factors behind, the court's decision in *United States v. Adlman,* 134 F.3d 1194 (2d Cir. 1998).

A close review of *Adlman* shows that it is inapposite to the facts underlying this motion. In *Adlman,* an accountant and lawyer at Arthur Andersen & Co. was retained to evaluate the tax implications of a proposed restructuring, expected to produce an enormous loss and tax refund, that appellant Adlman expected would be challenged by the IRS and would result in litigation. *Adlman,* 134 F.3d at 1195. Adlman sought work product protection for the fruits of Arthur Andersen's work: a 58-page detailed legal analysis of likely IRS challenges to the reorganization and the resulting tax refund claim which contained discussion of statutory provisions, IRS regulations, legislative history, and prior judicial and IRS rulings relevant to the claim as well as possible legal theories or strategies for defendant to adopt in response, recommended preferred methods of structuring the transaction, and predictions about the likely outcome of litigation. *Id.* The documents in *Adlman,* while prepared for the business purpose of deciding whether to undertake a merger, focused squarely upon and analyzed the anticipated litigation that would result from the merger, and therefore were protected. *Id.* Here, in contrast, the Requested Documents do not analyze anticipated litigation, rather they analyze Veeco's past business

transactions and accounting practices.[1]

In addition, further analysis of this issue by the *Adlman* court makes it clear that the Second Circuit's aim in adopting the "because of" test was to protect "legal analysis that falls squarely within *Hickman's* [*Hickman v. Taylor*, 329 U.S. 495 (1947)] area of primary concern - analysis that candidly discusses the attorney's litigation strategies, appraisal of likelihood of success, and perhaps the feasibility of reasonable settlement." *Id.* at 1200. The *Adlman* court offered three factual scenarios in support of its test, all of which involved circumstances in which a legal analysis of litigation strategies and their likelihood for success influenced a future business decision. *Id.* at 1199-1200.[2]

The facts in this case fall outside the factual scenarios contemplated by *Adlman*. Instead of providing an analysis of the results of litigation so as to inform a future business decision, the Requested Documents here analyze past fraudulent business practices which eventually led to litigation. A decision, like Veeco's, to restate previously issued financial statements does not turn on the likelihood of anticipated litigation or its outcome, rather, financial statements must be

---

1 Moreover, to the extent that any analysis of anticipated litigation may be present within the Requested Documents, the solution demanded by Defendants, denying Plaintiffs access to the entirety of the Requested Documents, is unduly harsh and unwarranted. Rather, Plaintiffs respectfully submit that the Court can review the Requested Documents *in camera* so that any such legal analysis can be redacted.

2 The factual scenarios involved (1) a publisher contemplating publication of a book where the publisher has received a threat of suit from a competitor purporting to hold exclusive publication rights; (2) a company engaged in, or contemplating, some kind of business association with another company and the other company reasonably requesting that the company furnish a candid assessment of its likelihood of success in existing litigations; and (3) a business entity preparing financial statements which include reserves for projected litigation and the company's independent auditor requesting a memorandum estimating the likelihood of success in litigation to assist it in estimating what should be reserved for litigation losses. *Adlman,* 134 F.3d at 1199-1200.

restated when they are materially false. Similarly, decisions to improve internal financial controls and to make personnel changes also cannot be said to be based on the outcome of future litigation; rather internal control improvements are to be made where they are deficient and personnel changes are made when they are necessary. Notably, the factual differences between *Adlman* and *In re Leslie Fay Cos. Sec. Litig.,* 161 F.R.D. 274 (S.D.N.Y. 1995), are so apparent that the court in *Adlman* found no reason to cite *Leslie Fay,* as it was not relevant to the facts before the court nor to the court's analysis.

Defendants contend that *Leslie Fay* offers an "outdated standard." However, the *Leslie Fay* decision has been cited, post-*Adlman,* for its conclusions regarding the applicability of work product protection to documents created for business purposes. *See Granite Partners v. Bear, Stearns & Co., Inc.,* 184 F.R.D. 49, 52-53 (S.D.N.Y. 1999)(citing both *Leslie Fay* and *In re Kidder Peabody Sec. Litig.,* 168 F.R.D. 459, 462-67 (S.D.N.Y. 1996), as persuasive authority, nearly a year after the *Adlman* decision, also the court recognized that *Adlman* requires that a party seeking work product protection must show that the document "would not have been prepared in substantially similar form but for the prospect of" litigation); *Seibu Corp. v. KPMG, LLP,* 2002 WL 87461, at *4 (N.D. Tex. Jan 18, 2002)(where party, which retained Gibson, Dunn & Crutcher, LLP to assist with an internal investigation, sought to shield documents from discovery contending that the documents were not prepared in the ordinary course of business, the court denied work product protection finding that, while the party may have reasonably anticipated litigation, the documents were not created "because of" litigation; rather the internal investigation was conducted to make personnel decision, favorably citing *Leslie Fay*); *see also* Plaintiffs' Br. at 12 (citing *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433, 435-36

(D. Md. 2005)).

Further, Defendants improperly attempt to expand the *Adlman* decision, beyond its focus on protecting legal analysis, by citing to numerous inapposite cases where no discernible business purposes were present or where the parties did not contest the applicability of work product protection. *See Ohio Cas. Group v. American Intern. Specialty Lines Ins.*, 2006 WL 2109475, at *1 (S.D.N.Y. Jul. 25, 2006)(involving a dispute over insurers' post-verdict claims file documents; while neither the nature of these documents, nor any business purpose, is discussed, one may assume that they involve litigation strategies related to analysis of insurers' liability for contribution to a $78 million jury verdict); *Ruotolo v. City of New York*, 2005 WL 823015, at *2 (S.D.N.Y. Apr. 7, 2005)(without discussing any independent business purpose, the court found that plaintiff would not have prepared the notes if he had not been contemplating the prospect of litigation); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, (S.D.N.Y. 2004)(the court noted that the parties here did not contest the applicability of the work product privilege); *City of Worcester v. HCA Management Co., Inc.*, 839 F.Supp. 86, 88 (D. Mass. 1993)(the court stated that it "must determine whether the prospect of litigation was the actual and primary motivation" for the auditor to prepare the contested document).[3]




---

[3] Defendants' authority for their contention that involvement of counsel is highly probative of whether a company was, in fact, anticipating litigation, is unpersuasive. *See* Defendants' Br. at 12 n. 2 (citing *Fine v. Bellefonte Underwriters Ins. Co.*, 91 F.R.D. 420, 422-23 (D.C.N.Y. 1981)(finding involvement of counsel not dispositive and denying work product protection because the contested documents were produced in the "ordinary course").

REDACTED



REDACTED

The line between "anticipation of litigation" and "business purposes" is not too blurry to be meaningful in this instance – Veeco's stated purpose, at the time it retained Kaye Scholer and Jefferson Wells, did not include litigation, rather it was limited to business purposes. Accordingly, Defendants' work product argument fails.

**B. <u>Defendants' Disclosures Have Waived Any Applicable Privilege</u>**

Defendants' response offers no valid argument to counter Plaintiffs' argument that work-product protection over the Requested Documents was effectively waived by Defendants'

affirmative disclosure of substantive information about the internal TurboDisc investigation in a series of Veeco's press releases and public filings, and in a letter[4] from Veeco's counsel to the SEC - a potential adversary - in response to SEC questions on the subject following Veeco's issuance of its 2004 Form 10-K. Plaintiffs' Br. at 13 -15. Plaintiffs' cases support the conclusion that such selective, but substantive disclosure, is sufficient to defeat any expectation that the work-product protection would apply. *Id.*

Defendants mistakenly argue that they disclosed only cursory "findings" of the investigation, and no substance, and cite cases in which no substance was revealed, and which are, thus, wholly inapposite to this case where Defendants made numerous detailed disclosures. *See* Defendants' Br. at 16-20. For example, in *In re DaycoCorp. Deriv. Sec. Litig.*, 99 F.R.D. 616 (S.D. Ohio 1983), heavily relied upon by Defendants, the court found that the company's press release did not even summarize evidence found in the report and disclosed no substance, but only released "findings"; thus, work product was not waived as to the Report of Counsel to the Special Review Committee of the Board of Dayco. *Id.* at 619.

In this case, Defendants' public statements disclosed far more than the cursory "findings" of the *Dayco* case and others cited by defendants. For example, the relevant portion of the August 3, 2005 letter to the SEC, written by Kaye Scholer on behalf of Veeco, divulges substantive details about the investigation which are the subject of the Requested Documents. The letter was written in response to the SEC's request for "greater detail" about the TurboDisc



accounting improprieties and investigation disclosed in Veeco's 2004 10-K.

In that letter, in the response to each of the SEC's questions, Kaye Scholer states that the improper accounting improprieties at TurboDisc "included entries in the accounts relating to inventory (including work in progress, labor and overhead, research and development projects and certain other accounts), revenue (including sales and material), accounts receivable (including accounts relating to amounts due from Emcore Corporation), accounts payable (including accounts relating to payments due to Emcore Corporation and certain other vendors), warranty reserve, accrued expenses and deferred gross profit." The letter goes on to describe the genesis and triggering events for the investigation, the conclusions of the investigation, the Company's assessment of internal controls, management conclusions regarding lack of internal controls, and the list of corrective actions taken by Veeco in connection with the discovery of improper accounting entries. *Id.* This detailed response to the SEC, now fully disclosed to Plaintiffs in the course of discovery, are surely more than cursory "findings" or mere acknowledgment that an investigation exists, and, instead, disclose "significant parts" of the investigation to Veeco's adversaries, and are sufficient to waive work-product protection over the related documents sought in Plaintiffs' Motion. *See* discussion and cases in Plaintiffs' Br. at 13-15.[5]

**C. By Producing Documents that Divulged Substantive Facts on the Same Subject Matter as the Requested Documents Defendants Waived Work Product Protection**

---

[5] Contrary to Defendants' assertion, Plaintiffs do not claim that Defendants waived work product protection as a result of disclosures to E&Y, rather Plaintiffs have asserted other bases demonstrating Defendants' waiver of work product protection. However, Plaintiffs stand by their assertion that disclosure to E&Y waived any assertion of the attorney-client privilege. *See* Plaintiffs' Br. at 7-8.

Notably, in their response brief, Defendants argue that plaintiffs have no substantial need for the Requested Documents because the same information is "readily available" in documents "already produced to Plaintiffs in this litigation." Defendants' Br. at 21. But this very argument supports Plaintiffs' argument that Veeco waived work product protection through previous disclosures of the information. If Defendants have, as they state, voluntarily disclosed to Plaintiffs substantial information about the investigation, then there is no reason Defendants should now be able to withhold any critical information that would allow Plaintiffs to fully comprehend the investigation. The documents produced so far disclose sufficient substance to waive any privilege, but not enough to provide plaintiffs with the "whole picture." *See, e.g.,In re OM Sec. Litig.*, 226 F.R.D. 579, 590-592 (N.D. Ohio 2005). In *OM*, the court, distinguishing *Dayco,* found that there could be "no reasonable dispute" that defendants waived *any* privilege by producing documents that contained substantive information related to the underlying document sought by plaintiffs. *Id.* at 592-93. The *OM* court explained that the disclosures to plaintiffs "were not brief or cryptic summaries, nor did they merely acknowledge the existence of an investigation," but contained "significant disclosures" including "the reason for the origination of the Audit Committee's inventory review," which the Board considered in connection with its issuance of a press release announcing that the company anticipated a restatement of its earnings. *Id.* at 592-93. Under these facts, the court ordered defendants to produce all underlying documents relating to and/or underlying the investigation. *Id.* Here too, as Defendants assert, they have disclosed more than a "cursory summary, a brief press release, or a mere acknowledgment that an investigation exists" and accordingly, have waived any privilege. *Id.* at 593. In short, Defendants cannot have it both ways: They cannot claim that the

Requested Documents that they are withholding are identical to those that they have already voluntarily produced while at the same time arguing that they are substantively different, i.e. privileged. If, as Defendants assert, Plaintiffs have "no need" for the Requested Documents because Defendants have already produced "much of the information" on the investigation, then they are admitting that they provided the "substance" of the requested documents, and have waived any privilege. Accordingly, Plaintiffs are entitled to all of the documents generated in connection with the investigation, including the actual reports, the interview notes, and memoranda and workpapers. Anything less would prevent plaintiffs from discovering the "whole picture" and would unfairly prejudice plaintiffs in this litigation.[6]

**D. Defendants Have Not Defeated Plaintiffs' Substantial Need Arguments**

Defendants have failed to establish that the Requested Documents should be afforded any privilege. Thus, Defendants' contention that the information sought is "readily available to Plaintiffs" in documents already produced or by way of "deposition testimony" (Defendants' Br. at 21-22) is irrelevant: If the Requested Documents are relevant and not protected, they are discoverable under Rule 26.

Moreover, even if, *arguendo*, any privilege exists, which it does not, Defendants' argument should be rejected. The information is not "readily available" from any other sources. *See* Plaintiffs' Br. at 16. Even if documents already produced to Plaintiffs contain evidence to



support Plaintiffs' claims, only the actual reports and underlying memoranda and notes can provide Plaintiffs with the coherent picture of the alleged fraud which Plaintiffs need to prove the elements of their claims.[7] *See In re Scholastic Corp. Sec. Litig.*, 252 F. 3d 63, 69 (2d Cri. 2001)(setting forth elements, including scienter, required for plaintiff to state cause of action for securities fraud under Section 10(b) and Rule 10b-5; for example, scienter can be shown by "repeated and pervasive GAAP violations" and accounting and financial activities that are "contrary to stated policy and prior practice" of the company).

Moreover, Defendants' statement that Plaintiffs can obtain the information by deposing certain individuals is specious. For one thing, Jefferson Wells has indicated that some of the critical individuals who worked on the engagement are no longer employed by Jefferson Wells, and may be difficult, costly and time consuming to locate in a case where the Court has ordered a rapid discovery schedule. Moroever, counsel for Defendants, or the deponents, will doubtless prevent these witnesses from discussing the content of the investigation on the basis of the same assertions of privilege asserted when they refused to produce the documents pursuant to Plaintiffs' discovery requests and subpoeanas. Finally, as a practical matter, Plaintiffs have the right to obtain this critical information at this juncture, to prepare for mediation. The Jefferson Wells and other reports and underlying information in the Requested Documents are critical to Plaintiffs' claims because they go directly to every one of the accounting issues in this case, including Defendants' knowledge thereof. Permitting Plaintiffs to obtain these documents at

---

[7] A review of the documents listed in the Declaration of Ross Wallin indicates none constitute the type of coherent, detailed and chronological analysis that a comprehensive report, such as is likely contained in the Kaye Scholer and Jefferson Wells final reports, would provide. Thus, Plaintiffs still have a substantial need for the Requested Documents to support the claims in their case.

this time is certainly the only fair, and, indeed, efficient, way to proceed.

Respectfully Submitted,

DATED: August 28, 2006

**BERGER & MONTAGUE, P.C.**

By: ______________________

Sherrie R. Savett
Phyllis M. Parker
Jeffrey L. Osterwise
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000

*Lead Counsel for Lead Plaintiff*
*Steelworkers Pension Trust and The Class*