**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------- x
In re VEECO INSTRUMENTS, INC.          :        Case No.: 7:05-md-01695 (CM)
SECURITIES LITIGATION                  :
----------------------------------------------------- x
----------------------------------------------------- x
THIS DOCUMENT RELATES TO               :
ALL ACTIONS                            :
----------------------------------------------------- x
```

**DECLARATION OF JEFFREY L. OSTERWISE IN FURTHER
SUPPORT OF LEAD PLAINTIFF'S MOTION TO VACATE AND
REVERSE THE DISCOVERY ORDER OF MAGISTRATE JUDGE
GEORGE A. YANTHIS SIGNED JANUARY 24, 2007 PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 72**

Jeffrey L. Osterwise, hereby declares as follows:

I, Jeffrey L. Osterwise, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746

that the following is true and correct:

1.      I am an associate of the law firm of Berger & Montague, P.C., lead counsel for Lead

Plaintiff in this litigation.

2.      I submit this Declaration in further support of Lead Plaintiff's Motion to Vacate and

Reverse the Discovery Order of Magistrate Judge George A. Yanthis Signed January 24, 2007

Pursuant to Federal Rule of Civil Procedure 72.

3.      Attached hereto as Exhibits are true and correct copies of the following:

| Exhibit No. | Description |
| --- | --- |
| A | Relevant portions of the Transcript of the Deposition of John Kiernan, dated February 27, 2007. |
| B | Relevant portions of the Rough Draft Transcript of the Deposition of John F. Rein, dated February 28, 2007. |

Dated: March 1, 2007

_____
Jeffrey L. Osterwise

# EXHIBIT A

# ORIGINAL

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

CASE NO.: 05-MD-1695 (CM)

----------------------------x

In Re:

VEECO INSTRUMENTS, INC.,

SECURITIES LITIGATION

----------------------------x


        VIDEOTAPED DEPOSITION of JOHN KIERNAN,

a witness called by counsel for Plaintiffs, taken

pursuant to the Federal Rules of Civil Procedure

before Eileen Mulvenna, CSR/RMR and Notary Public

within and for the State of New York, taken at

the office of Milberg Weiss & Bershad, One Penn

Plaza, New York, New York on February 27th, 2007,

commencing at 10:17 a.m.

166

John Kiernan

1

2    Q.    Where was your office at the time,    15:17:02

3    this late 2004, early 2005 time period?  Not in    15:17:04

4    Somerset, was it?    15:17:10

5    A.    No, my office is based in the Veeco    15:17:12

6    corporate office in Woodbury.    15:17:16

7    Q.    And were there occasions on which    15:17:20

8    Jefferson Wells people came to Woodbury?    15:17:27

9    A.    Yes, they did.    15:17:31

10    Q.    And what did the Jefferson Wells    15:17:32

11    people do when they came to Woodbury?    15:17:34

12    A.    Principally two items, I recall.    15:17:42

13    The first item was when they reviewed the work    15:17:46

14    prepared by management with respect to the    15:17:50

15    revenue adjustments.  All of those accounting    15:17:52

16    records are kept at the Woodbury facility.  When    15:17:54

17    they reviewed the work, they reviewed that at    15:17:59

18    Woodbury.    15:18:02

19    And second, any presentations or    15:18:04

20    reports that they would have given to the audit    15:18:09

21    committee, they may have done in person or by    15:18:13

22    phone in Woodbury.  I'm not sure.    15:18:17

23    Q.    Did the audit committee meet at    15:18:19

24    Woodbury?    15:18:21

25    A.    The audit committee did meet in    15:18:23

167

John Kiernan

| | | |
|---|---|---|
| 1 | John Kiernan | |
| 2 | Woodbury.  I don't know, with respect to | 15:18:25 |
| 3 | specifically meetings during this time period, if | 15:18:29 |
| 4 | they were telephonic meetings or there were | 15:18:34 |
| 5 | meetings in Woodbury.  I don't recall. | 15:18:36 |
| 6 | Q.    I see. | 15:18:47 |
| 7 | What was the cost of what has been | 15:18:58 |
| 8 | described in Veeco documents as the investigation | 15:19:02 |
| 9 | that included -- that -- in which Jefferson Wells | 15:19:07 |
| 10 | did, in part which you've described and I assume | 15:19:10 |
| 11 | some other things -- | 15:19:14 |
| 12 | MR. HERFORT:  How much money was | 15:19:15 |
| 13 | Jefferson Wells paid? | 15:19:16 |
| 14 | MS. BRODERICK:  Oh, it wasn't only | 15:19:18 |
| 15 | Jefferson Wells that got paid. | 15:19:19 |
| 16 | Q.    Isn't that right? | 15:19:20 |
| 17 | MR. HERFORT:  What is the -- how is | 15:19:24 |
| 18 | this likely to lead to discoverable | 15:19:25 |
| 19 | evidence? | 15:19:27 |
| 20 | Q.    You can answer the question. | 15:19:28 |
| 21 | MR. HERFORT:  Wait a minute.  Wait. | 15:19:29 |
| 22 | You've got to put some parameters on | 15:19:31 |
| 23 | your question.  What costs are you talking | 15:19:33 |
| 24 | about? | 15:19:34 |
| 25 | Q.    There was an investigation; right? | 15:19:38 |

168

1                     John Kiernan

2    And Jefferson Wells got paid and at least one        15:19:39

3    other entity got paid.                               15:19:43

4              MR. HERFORT:  Who is that?                  15:19:45

5              MS. BRODERICK:  You know perfectly          15:19:46

6       well.                                             15:19:47

7       Q.    What was the cost of the                    15:19:49

8    investigation?                                       15:19:50

9              MS. BRODERICK:  Let's not waste            15:19:51

10      time.                                             15:19:52

11             MR. HERFORT:  I'm going to instruct        15:19:52

12      him not to answer.                                15:19:52

13             MS. BRODERICK:  You are?                    15:19:54

14             MR. HERFORT:  Yes.                          15:19:55

15             MS. BRODERICK:  You know you're not        15:19:55

16      supposed to do that.                              15:19:56

17             MR. HERFORT:  I think that gets into       15:19:57

18      the work product area.                            15:19:57

19             MS. BRODERICK:  The cost of an             15:19:58

20      investigation --                                  15:20:00

21             MR. HERFORT:  The checks that they         15:20:00

22      wrote to Jefferson Wells and Kaye Scholer         15:20:01

23      for work product --                               15:20:04

24             MS. BRODERICK:  For one thing, for         15:20:05

25      God's --                                          15:20:06

169

John Kiernan

| | | |
|---|---|---|
| 1 | | |
| 2 | MR. HERFORT:  Carole, keep your | 15:20:07 |
| 3 | mouth shut and let me listen to him.  Okay? | 15:20:08 |
| 4 | You've got to cool it.  I want to -- let's | 15:20:11 |
| 5 | do this professionally.  All right? | 15:20:13 |
| 6 | MS. BRODERICK:  You should start. | 15:20:15 |
| 7 | MR. HERFORT:  You start too. | 15:20:16 |
| 8 | Let me talk to -- Mr. Wallin wants | 15:20:17 |
| 9 | to talk to me.  Let me talk to him.  Don't | 15:20:18 |
| 10 | start yelling. | 15:20:21 |
| 11 | (Discussion off the record.) | 15:20:21 |
| 12 | (Counsel leave the room.) | 15:20:24 |
| 13 | THE VIDEOGRAPHER:  3:21 p.m.  We're | 15:20:40 |
| 14 | going off the record. | 15:20:41 |
| 15 | (Recess from the record.) | 15:20:43 |
| 16 | THE VIDEOGRAPHER:  Time is 3:30 p.m. | 15:30:19 |
| 17 | We're back on the record. | 15:30:21 |
| 18 | MR. HERFORT:  Miss Broderick has | 15:30:23 |
| 19 | some questions involving numbers, and let's | 15:30:24 |
| 20 | proceed and have them -- | 15:30:26 |
| 21 | MS. BRODERICK:  Would you read the | 15:30:28 |
| 22 | question back and maybe this time he'll | 15:30:28 |
| 23 | answer it. | 15:30:31 |
| 24 | MR. HERFORT:  -- have them asked. | 15:30:32 |
| 25 | (Record read.) | 15:30:42 |

170

John Kiernan

| | |
|---|---|
| 1 | |
| 2 | A.     My recollection was in the range of | 15:30:42 |
| 3 | about $800,000. | 15:30:46 |

     A.     My recollection was in the range of     15:30:42

about $800,000.                                      15:30:46

     Q.     And is that cost approximately what     15:31:00

Veeco expected when the investigation was           15:31:01

started?                                            15:31:05

     A.     I don't recall what our initial         15:31:09

estimate was.                                       15:31:11

     Q.     Well, let's come at it another way.     15:31:14

          Did the cost of the investigation         15:31:16

come as a shock to you?  And by "you," I mean       15:31:18

Veeco and not you personally, Mr. Kiernan.          15:31:20

     A.     No, I don't believe so.                 15:31:25

     Q.     And what was Veeco getting for the      15:31:29

$800,000?                                           15:31:30

          MR. HERFORT:  Let's just -- haven't       15:31:34

     you really covered at some length the          15:31:39

     actual work that was done?                     15:31:41

          MS. BRODERICK:  Let me decide.            15:31:43

          MR. HERFORT:  You do have some            15:31:45

     rights, that's true.                           15:31:46

          MS. BRODERICK:  Yes, I do.  You           15:31:47

     know, what amendment was it that gave us       15:31:48

     the vote?                                      15:31:50

          MR. HERFORT:  It's not what we're         15:31:51

171

1                    John Kiernan

2   talking about.                              15:31:52

3         MS. BRODERICK:  I know you'd rather    15:31:54

4   appeal it, but it's not for you to do.      15:31:55

5         MR. HERFORT:  I really wouldn't.  It   15:31:57

6   makes for an interesting political system   15:31:58

7   to have characters like you voting.         15:32:01

8         MS. BRODERICK:  Careful or you'll      15:32:03

9   get Hillary Clinton.                        15:32:04

10        Now, let him answer the question.     15:32:07

11        MS. HIRSH:  I'm sorry.                 15:32:09

12        MR. HERFORT:  Maybe I like --         15:32:11

13        MS. HIRSH:  Right after reading the    15:32:13

14   headline about the Dow falling of 500       15:32:14

15   points.                                     15:32:19

16        MS. BRODERICK:  Oh, really?  500?      15:32:19

17        MS. HIRSH:  Something to do with       15:32:20

18   China.                                      15:32:21

19        MS. BRODERICK:  Let's let him answer   15:32:23

20   the question.  You know you're not allowed  15:32:24

21   to instruct him not to answer except on the 15:32:26

22   grounds of privilege.                       15:32:28

23        MR. HERFORT:  You might be getting     15:32:29

24   near.                                       15:32:30

25        MS. BRODERICK:  Well, near is not      15:32:30

172

1          John Kiernan

2     good enough.                                    15:32:31

3          MR. HERFORT:  You were interested,         15:32:32

4     having gone over the basic work that            15:32:32

5     they've done for the last hour and a half.      15:32:35

6     You want him to repeat it again?                15:32:36

7          MS. BRODERICK:  No.  I asked him a          15:32:39

8     question.  If you're going to instruct him      15:32:40

9     not to answer, at your peril, then do so;       15:32:41

10    if you're not, then --                          15:32:44

11         MR. HERFORT:  If you can answer the         15:32:44

12    question without getting into the               15:32:45

13    impressions and conclusions of the people       15:32:46

14    who did the work for you, answer it.            15:32:47

15    A.     My understanding is that of the          15:32:51

16    $800,000, that was principally paid to three    15:32:54

17    firms.  That it was paid to Ernst & Young for   15:33:02

18    additional audit work that they performed.  It  15:33:07

19    was paid to Kaye Scholer to lead the            15:33:12

20    investigation.  And it was paid to Jefferson    15:33:15

21    Wells for the work they performed.              15:33:18

22    Q.     And is it -- what was your               15:33:21

23    understanding about -- I understand who you paid 15:33:26

24    it to -- about what you got for your $800,000?  15:33:30

25    It's a lot of money.                            15:33:35

173

John Kiernan

| | | |
|---|---|---|
| 1 | John Kiernan | |
| 2 | MR. HERFORT:   Read the question back | 15:33:37 |
| 3 | again, please. | 15:33:38 |
| 4 | (Record read.) | 15:33:39 |
| 5 | MR. HERFORT:   I'll object as to | 15:33:55 |
| 6 | form. | 15:33:55 |
| 7 | I think this has been gone over and | 15:33:56 |
| 8 | over and over again for the last two hours. | 15:34:00 |
| 9 | MS. BRODERICK:   Cry. | 15:34:03 |
| 10 | A.     My recollection is that each one of | 15:34:07 |
| 11 | those three firms billed to Veeco on an hourly | 15:34:08 |
| 12 | basis for the work that they performed. | 15:34:13 |
| 13 | Q.     Let me put it a different way. | 15:34:16 |
| 14 | What purpose -- what benefit did you | 15:34:20 |
| 15 | derive for the $800,000 that you paid to these | 15:34:25 |
| 16 | people? | 15:34:30 |
| 17 | A.     The audit committee engaged Kaye | 15:34:36 |
| 18 | Scholer to perform an investigation under their | 15:34:40 |
| 19 | direction, and they're reporting directly into | 15:34:42 |
| 20 | the audit committee.  I'm not privileged to what | 15:34:47 |
| 21 | they performed in that regard. | 15:34:50 |
| 22 | Work performed by Ernst & Young | 15:34:56 |
| 23 | included additional audit procedures to review | 15:34:59 |
| 24 | the adjustments and the account analysis that was | 15:35:06 |
| 25 | performed that was outside of the original scope | 15:35:08 |

174

John Kiernan

| | | |
|---|---|---|
| 1 | John Kiernan | |
| 2 | of their intended audit work, and that Ernst & | 15:35:10 |
| 3 | Young did these additional procedures in order to | 15:35:14 |
| 4 | be able to render an opinion on the financial | 15:35:17 |
| 5 | statements, which they ended up rendering their | 15:35:20 |
| 6 | opinion on the financial statements. | 15:35:24 |
| 7 | Jefferson Wells reviewed the work | 15:35:28 |
| 8 | that was performed by management and also did | 15:35:32 |
| 9 | forensic work. | 15:35:35 |
| 10 | Q.    And what benefit did the company | 15:35:37 |
| 11 | derive from that? | 15:35:39 |
| 12 | A.    I think that was -- the work that | 15:35:52 |
| 13 | was performed by Jefferson Wells enabled Ernst & | 15:35:54 |
| 14 | Young to be able to render their opinion on | 15:36:02 |
| 15 | Veeco's financial statements, and that was a | 15:36:09 |
| 16 | requirement. | 15:36:13 |
| 17 | Q.    Did the work done by Jefferson Wells | 15:36:16 |
| 18 | also enable Ernst & Young to render their opinion | 15:36:19 |
| 19 | on Veeco's internal controls? | 15:36:24 |
| 20 | A.    I believe they considered the work | 15:36:36 |
| 21 | performed, but I don't know what -- the exact | 15:36:37 |
| 22 | reliance that they may have attributed to the | 15:36:41 |
| 23 | work performed by Jefferson Wells. | 15:36:45 |
| 24 | Q.    Okay.  Did there come a time in the | 15:36:47 |
| 25 | third quarter of 2004 that you, Mr. Kiernan, | 15:37:44 |

# EXHIBIT B

ROUGH ASCII VEECO-REIN 2-28-07

1

1     UNPROOFREAD/UNCERTIFIED ROUGH DRAFT ONLY

2     Reporter's Name:  EILEEN MULVENNA, CSR/RMR
      -----------------------------------------------------
3     REALTIME/INTERACTIVE ROUGH DRAFT TRANSCRIPT
      AND/OR UNCERTIFIED REALTIME ASCII DISCLAIMER
4     -----------------------------------------------------
      IMPORTANT NOTICE:
5     - AGREEMENT OF PARTIES -
      PROCEEDING BEYOND THIS PAGE CONSTITUTES
6     ACCEPTANCE OF AND AGREEMENT WITH THE FOLLOWING
      TERMS AND CONDITIONS
7     -----------------------------------------------------
      We, the party working with realtime and rough
8     draft transcripts and/or ASCII disks, understand
      that if we choose to use the realtime rough draft
9     screen, the rough printout, or the unedited ASCII
      disk, that we are doing so with the understanding
10    that all rough drafts are uncertified copies
      and...
11
      WE AGREE THEY WILL BE BILLED TO AND PAID FOR BY
12    US

13    We further agree not to comment in the record on,
      share, give, copy, scan, fax or in any way
14    distribute this realtime rough draft or ASCII in
      any form (written or computerized) to any party.
15    However, our own experts, co-counsel, and staff
      may have limited internal use of same with the
16    understanding that we agree to destroy our
      realtime rough drafts and/or any computerized
17    form, if any, and replace it with the final
      transcript/ASCII disk upon its completion.
18
      REPORTER'S NOTE:
19
      Since this deposition has been recorded by me in
20    realtime and is in rough draft form, please be
      aware that there may be discrepancies regarding
21    page and line number when comparing the realtime
      screen, the rough draft/uncertified transcript,
22    rough draft/uncertified ASCII disk, and the final
      transcript/ASCII disk.
23

24

25

2

1     UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2     Also please be aware that the realtime screen and
      the uncertified rough draft transcript/ASCII disk
3     may contain untranslated steno, reporter's notes
      as parentheticals, misspelled proper names,
4     incorrect or missing Q/A symbols or punctuation,
      and/or nonsensical English word combinations.
                        Page 1

```
                     ROUGH ASCII VEECO-REIN 2-28-07
  5      All such entries will be correct on the final,
         certified transcript/ASCII disk.
  6

  7

  8

  9

 10

 11

 12

 13

 14

 15

 16

 17

 18

 19

 20

 21

 22

 23

 24

 25
                                                              3
```

```
  1      UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

  2               THE VIDEOGRAPHER:  Good morning.      09:27:10

  3      We're on the record.  Today's date is         10:13:09

  4      February 28, 2007.  The time is 10:15 a.m.    10:13:11

  5                                                    10:13:15

  6               This is the videotape deposition of  10:13:16

  7      John F. Rein in the case of In Re: Veeco       10:13:19

  8      Instruments, Inc., Securities Litigation.     10:13:25

  9      Case No. 05-MD-1695.  This case is part of    10:13:27

 10      the United States District Court for the      10:13:33
                          Page 2
```

ROUGH ASCII VEECO-REIN 2-28-07

25      the record.  The time is 5:01 p.m.                    16:58:18
                                                      230

1      UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2      BY MS. BRODERICK:                                      16:58:22

3          Q.      How much did Veeco spend on the            16:58:26

4      investigation that you described in the affidavit      16:58:30

5      that you swore to that was filed in this action        16:58:43

6      in the federal District Court?                         16:58:48

7                  MR. SERIO:  I'm sorry could I have         16:58:56

8          that read back, please.                            16:58:57

9                  (Record read.)                             16:59:07

10                 MR. SERIO:  Objection to form.  You        16:59:08

11         mean outside counsel fees?                         16:59:09

12                 MS. BRODERICK:  The whole thing.           16:59:11

13         A.      I think there was a disclosure in          16:59:16

14     the 10-K that enumerated a number like eight or        16:59:17

15     900,000 but I don't specifically recall.               16:59:23

16         Q.      And wasn't the product that                16:59:36

17     investigation needed for you to obtain Ernst &         16:59:43

18     Young's opinions on Veeco's financial statements       16:59:51

19     and its internal controls?                             16:59:57

20                 MR. SERIO:  Objection to the form.         17:00:00

21         A.      I'm sorry, what investigation are          17:00:02

22     you referring to?                                      17:00:04

23         Q.      The financial statement -- the             17:00:06

24     investigation you just testified about, the cost       17:00:08

25     of which you said was disclosed in Veeco's public      17:00:10
                                                      231

1      UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2      document.                                              17:00:15

3          A.      The audit committee selected Kaye          17:00:16

4      Scholer and Jefferson Wells to assist in               17:00:21
                          Page 190

ROUGH ASCII VEECO-REIN 2-28-07

| | | |
|---|---|---|
| 5 | litigation, anticipation of litigation | 17:00:28 |
| 6 | preparation to evaluate and to give counsel and | 17:00:32 |
| 7 | guidance to the company.  In addition to | 17:00:36 |
| 8 | performing some analysis and forensic work in | 17:00:39 |
| 9 | regard -- in regard to ensuring that the accounts | 17:00:46 |
| 10 | were properly stated and the financial statements | 17:00:52 |
| 11 | were properly stated. | 17:00:57 |
| 12 | MS. BRODERICK:  Could you read the | 17:00:59 |
| 13 | question back. | 17:00:59 |
| 14 | (Record read.). | 17:01:00 |
| 15 | MR. SERIO:  Objection to form. | 17:01:18 |
| 16 | MS. BRODERICK:  It's product of the | 17:01:20 |
| 17 | investigation. | 17:01:21 |
| 18 | THE REPORTER:  (Nods head in the | 17:01:24 |
| 19 | affirmative.) | 17:01:24 |
| 20 | MR. SERIO:  Could you hear that?  I | 17:01:26 |
| 21 | couldn't hear it when you were reading it | 17:01:27 |
| 22 | back. | 17:01:29 |
| 23 | (Discussion off the record.) | 17:01:47 |
| 24 | (Record read.) | 17:01:48 |
| 25 | MR. SERIO:  Objection to form. | 17:01:57 |

232

| | | |
|---|---|---|
| 1 | UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY | |
| 2 | Q.    You can answer the question? | 17:02:13 |
| 3 | A.    I think I thought I did answer the | 17:02:15 |
| 4 | question, but a portion of that investigative | 17:02:17 |
| 5 | activity was used to assist us in -- us being | 17:02:23 |
| 6 | Veeco financial management in creating and | 17:02:29 |
| 7 | correcting -- creating the required entries and | 17:02:33 |
| 8 | adjustments and developing financial statements | 17:02:39 |
| 9 | on a correct basis and so a portion of that | 17:02:46 |

Page 191

ROUGH ASCII VEECO-REIN 2-28-07

10  activity was in that -- in assistance in that                    17:02:52

11  regard.  And that was required before Ernst &                    17:02:56

12  Young could audit our and given an opinion on our                17:02:59

13  December 31, 2004, financial statements.                         17:03:03

14          Q.    So it was necessary for Ernst &                    17:03:06

15  Young's opinion; right?                                          17:03:08

16                  MR. SERIO:  Objection to the form.               17:03:10

17          A.    A portion of the activities were                   17:03:11

18  necessary.                                                       17:03:13

19          Q.    That's the audit opinion; is that                  17:03:14

20  correct?                                                         17:03:16

21                  MR. SERIO:  Objection to the form.               17:03:16

22          Q.    Meaning the opinion on Ernst &                     17:03:18

23  Young -- on Veeco's financial statements; right?                 17:03:20

24          A.    We --                                              17:03:27

25                  (Telephone interruption.)                        17:03:29
                                                      233

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2                  MS. BRODERICK:  Good grieve.  I                   17:03:32

3           thought it was his stomach.                              17:03:34

4           A.    I'd like to just clarify what the                 17:03:41

5    question --                                                     17:03:43

6           Q.    Okay.  You described financially --               17:03:44

7    financial statement activity that was being                    17:03:49

8    performed by Jefferson Wells; isn't that correct?              17:03:51

9           A.    Well, I described financial activity              17:03:54

10   was being performed by Veeco financial management              17:03:56

11   and there was some assistance based on some of                 17:04:01

12   the work that Jefferson Wells did.                             17:04:03

13          Q.    Yes.  And then you testified, did                 17:04:06

14   you not that had that activity was necessary for               17:04:08

15   Ernst & Young to issue its opinion; is that                    17:04:13
                              Page 192

ROUGH ASCII VEECO-REIN 2-28-07

```
16    correct?                                              17:04:15
17                MR. SERIO:  Objection to the form.        17:04:16
18                (Telephone interruption.)                 17:04:17
19                MS. BRODERICK:  Turn it off.              17:04:20
20                MR. SERIO:  Sorry.                         17:04:24
21                MS. BRODERICK:  How many do you           17:04:25
22        have?                                              17:04:26
23                (Telephone interruption.)                 17:04:30
24                (Discussion off the record.)              17:04:40
25        Q.    Okay?                                        17:04:48
                                           234
```

```
1     UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2          A.    It was necessary for Veeco              17:04:48
3     management to get their financial accounts and    17:04:50
4     financial statements correct before Ernst & Young 17:04:54
5     would certify to our statements or we could ask   17:04:56
6     them to review and audit the underlying financial 17:05:01
7     statements.  And part of the Jefferson Wells'     17:05:05
8     activity was utilized to assist us in verifying   17:05:09
9     that the accounts were correct.                   17:05:15
10         Q.    So part of the Jefferson Wells'         17:05:16
11    activity was an activity which was engaged in for 17:05:18
12    the purpose of correcting records which was       17:05:28
13    necessary to do to get Ernst & Young to certify   17:05:31
14    Veeco's financial statements; is that correct?    17:05:37
15                MR. SERIO:  Objection to the form.     17:05:40
16         A.    It was -- we utilized Jefferson        17:05:43
17    Wells' activity to verify that what management    17:05:47
18    had come up with, which is what Ernst & Young was 17:05:51
19    looking at, was accurate.                         17:05:55
20         Q.    Okay.  So part of what Jefferson        17:05:58
                        Page 193
```

ROUGH ASCII VEECO-REIN 2-28-07

21   Wells was doing was used to get Ernst & Young to          17:06:00
22   issue an opinion on Veeco's financial statements;         17:06:07
23   isn't that right?                                          17:06:10
24                MR. SERIO:   Objection to the form.           17:06:11
25           Asked and answered.                                17:06:12
                                                     235

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2         A.    I think I did answer it.                        17:06:13
3         Q.    It's yes or no; is that correct?                17:06:15
4                MR. SERIO:   Objection to the form.            17:06:17
5         A.    I don't think it is.  I don't think            17:06:18
6    it is yes or no.  I think I gave my explanation.          17:06:19
7         Q.    What was the Jefferson Wells' work              17:06:24
8    on Veeco's fixing up TurboDisc's records used             17:06:28
9    for?                                                       17:06:35
10               MR. SERIO:   Objection to the form.            17:06:37
11        A.    I described that Veeco management --            17:06:38
12   financial management did the analysis and the             17:06:42
13   correction of the errors that were uncovered.             17:06:49
14   And that a portion of what Jefferson Wells' work          17:06:52
15   was utilized to verify that the amounts and               17:06:58
16   correction of errors that Veeco management,               17:07:04
17   financial management had established were in fact         17:07:07
18   verified by some of the work that Jefferson Wells         17:07:12
19   did.                                                       17:07:14
20        Q.    And is it also correct that Veeco              17:07:16
21   gave Ernst & Young Jefferson Wells' work to show         17:07:19
22   Ernst & Young that Jefferson Wells agreed with            17:07:27
23   Veeco management?                                          17:07:31
24               MR. SERIO:   Objection to the form.            17:07:32
25        A.                                                    17:07:37
                                                     236

Page 194

ROUGH ASCII VEECO-REIN 2-28-07

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2         THE WITNESS:  Repeat that, please.        17:07:37

3    I just like to make sure I understand every      17:07:38

4    word in that question.                           17:07:41

5         (Record read.).  Select                     17:07:56

6         A.    Selected schedules that management    17:08:06

7    used in verifying its correction of the errors in   17:08:07

8    the accounts may have been given to Ernst & Young   17:08:15

9    and some of those work papers may have come from    17:08:18

10   Jefferson Wells.                                 17:08:21

11        Q.    Wait a minute.  Did Veeco give Ernst   17:08:24

12   & Young any documents that showed that Jefferson   17:08:31

13   Wells agreed with Veeco management about Veeco     17:08:34

14   management's correction of TurboDisc accounts?     17:08:40

15         MR. SERIO:  Objection to form.            17:08:46

16        A.    I know that there was a report that    17:08:47

17   was prepared for the audit committee and for Kaye   17:08:48

18   Scholer and I believe that that report was shared   17:08:52

19   with Ernst & Young.  I don't know what purpose     17:08:56

20   that Ernst & Young found with that report.  I      17:08:59

21   also know that were certain analysis there were    17:09:03

22   done by Jefferson Wells personnel that were        17:09:06

23   utilized by Veeco management and may have been     17:09:10

24   reviewed by Ernst & Young in establishing that     17:09:12

25   the accounts were proper and the financial         17:09:14
                                          237

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2    statements were proper.                          17:09:16

3         Q.    And those analyses said we,           17:09:18

4    Jefferson Wells, agree with Veeco's management;   17:09:21

5    is that correct?                                 17:09:23

ROUGH ASCII VEECO-REIN 2-28-07

```
 6              MR. SERIO:  Objection to the form.        17:09:24
 7        I don't -- I think I would instruct him not     17:09:26
 8        to answer as to the substance of what the       17:09:29
 9        Jefferson Wells report said.  So you don't      17:09:32
10        immediate to answer.                            17:09:35
11        Q.     And you refuse to answer?                17:09:38
12        A.     On advice of counsel, I --               17:09:40
13        Q.     Okay.  Are you prepared to tell me       17:09:42
14   whether Jefferson Wells' work played any part in     17:09:45
15   obtaining Ernst & Young's audit opinion on           17:09:53
16   Veeco's financial statements?                        17:09:58
17        A.     I think --                               17:09:59
18              MR. SERIO:  Objection to the form.        17:10:00
19        A.     I think I previously described that.     17:10:01
20        Q.     No, this is a yes or no.  So far as      17:10:04
21   you're aware, did Jefferson Wells' work play any     17:10:06
22   part in obtaining Ernst & Young's audit opinion      17:10:09
23   on Veeco's financial statements?                     17:10:14
24              MR. SERIO:  Objection to the form.        17:10:15
25        A.     Jefferson Wells performed certain        17:10:17
                                               238
```

```
 1   UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
 2   analysis and assisted Veeco management in            17:10:20
 3   preparing the corrected errors and financial         17:10:23
 4   statements and that information was presented to     17:10:26
 5   Ernst & Young prior to them issuing their            17:10:31
 6   opinion.                                             17:10:32
 7        Q.     Okay.  Now, Ernst & Young issued         17:10:34
 8   another opinion in connection with Veeco's 2004      17:10:39
 9   10-K, didn't they?                                   17:10:45
10              MR. SERIO:  Objection to the form.        17:10:47
11        A.     Could you tell me what you're            17:10:48
                         Page 196
```