UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------ x
In re VEECO INSTRUMENTS, INC.           :        Case No.: 7:05-md-01695 (CM)(GAY)
SECURITIES LITIGATION                   :
------------------------------------------------------ x
------------------------------------------------------ x
THIS DOCUMENT RELATES TO                :
ALL ACTIONS                             :
------------------------------------------------------ x
```

### CORRECTED MEMORANDUM OF LAW IN SUPPORT
### OF MOTION FOR PARTIAL RECONSIDERATION
### OF THE COURT'S MARCH 9, 2007 ORDER

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Carole A. Broderick
Phyllis M. Parker
Jeffrey L. Osterwise
Shoshana T. Savett
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4674

*Lead Counsel for Lead Plaintiff and the Class*

## TABLE OF CONTENTS

INTRODUCTION ......................................................... 1

ARGUMENT ............................................................. 2

    1.    DEFENDANTS CLAIM OF WORK PRODUCT PROTECTION FOR
        THE DOCUMENTS PREPARED BY JEFFERSON WELLS INTERNAL
        AUDITORS IS BASED ON MISREPRESENTATIONS OF FACT .......... 2

    2.    THE FACTUAL UNDERPINNINGS FOR THE CLAIM OF WORK
        PRODUCT PRIVILEGE IN THE REIN AND GREISS AFFIDAVITS
        ARE CONTRARY TO FACT ...................................... 3

    3.    DEFENDANTS' ASSERTIONS BASED UPON THE FORM OF
        DOCUMENTS PREPARED BY VEECO IN THE ORDINARY
        COURSE OF BUSINESS MISCONCEIVE  THE ADLMAN TEST
        FOR WORK PRODUCT PROTECTION .............................. 8

    4.    PLAINTIFF HAS SUBSTANTIAL NEED FOR THE DOCUMENTS
        BECAUSE THE INFORMATION CONTAINED THEREIN CANNOT
        POSSIBLY BE OBTAINED THROUGH DEPOSITIONS OR
        INTERROGATORIES ......................................... 10

CONCLUSION .......................................................... 12

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Commer v. McEntee,*
   2006 WL 3262494 (S.D.N.Y. Nov. 9, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Veeco Instruments, Inc. Sec. Litig.,*
   2007 WL 724555 (S.D.N.Y. March 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*U.S. v. Adlman,*
   134 F.3d 1194 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*U.S. v. Tenzer,*
   213 F.3d 34 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## INTRODUCTION

Lead Plaintiff Steelworkers Pension Trust ("Plaintiff"), respectfully moves the Court to reconsider its March 9, 2007 Order denying Lead Plaintiff's Motion to Vacate and Reverse the Discovery Order of the Magistrate Judge dated January 24, 2007 on the grounds that the decision was based on factual inaccuracies resulting from the materially misleading affidavits submitted by Defendants and because Plaintiff has demonstrated a substantial need for these documents.

Plaintiff is not seeking reconsideration of the Court's decision to the extent it concerns memoranda generated by Kaye Scholer LLP ("Kaye Scholer") and interview notes and memoranda compiled by Jefferson Wells International, Inc. ("Jefferson Wells.") as a part of any forensic investigation. However, Plaintiff does seek reconsideration of the Court's decision to the extent that it concerns documents prepared by Jefferson Wells internal auditors.

Plaintiff also seeks documents created by Veeco Instruments Inc. ("Veeco" or the "Company"), as Defendants do not deny that the Veeco documents would been prepared regardless of the prospect of litigation and Defendants have not presented evidence that the form of each of these documents would have been substantially different absent the prospect of litigation. Therefore, the evidence does not support a finding of work product protection for these documents under the law in this Circuit.  Some of these documents were provided to Ernst & Young LLP (Ernst & Young"), Veeco's auditors, and used as workpapers for Ernst & Young's audit of Veeco's 2004 financial statements.

The documents created by Veeco were prepared as a part of a fraud audit at the Company, as discussed below. The Jefferson Wells internal auditors were reviewing and verifying Veeco's work to ensure that it was done in the form acceptable to Ernst & Young to obtain its auditor's

1

opinion on Veeco's financial statements.

**ARGUMENT**

1.   DEFENDANTS CLAIM OF WORK PRODUCT PROTECTION FOR THE DOCUMENTS
     PREPARED BY JEFFERSON WELLS INTERNAL AUDITORS IS BASED ON
     MISREPRESENTATIONS OF FACT

Newly discovered evidence[1] establishes that the Affidavit of Defendant John F., Jr. (the

"Rein Affidavit") misrepresented the work actually performed by the Jefferson Wells internal

auditors, by stating that the Audit Committee of Defendants Veeco authorized Kaye Scholer to hire

Jefferson Wells to perform "account reconstruction" and that Kaye Scholer hired Jefferson Wells

for that purpose.

Both Defendants John P. Kiernan and Rein testified that Jefferson Wells internal auditors <u>did</u>

<u>not</u>, as the Rein Affidavit states, perform "account reconstruction" (correction of TurboDisc's

financial statements).  Rather, as Kiernan and Rein testified, the Jefferson Wells internal auditors

reviewed and verified <u>Veeco's own correction</u> of its TurboDisc subsidiary's accounting records.  As

Defendant Kiernan testified, that review and verification enabled Veeco's auditor, Ernst & Young,

to issue its opinion on Veeco's financial statements, which was necessary to permit the company to

file its Form 10-K with the SEC. Veeco did its own "account reconstruction."  Jefferson Wells

verified it.

The Rein Affidavit misrepresents these facts as does the Declaration of Rory A. Greiss.

---

[1]The newly discovered evidence from the depositions of Defendants Rein and Kiernan,
taken February 27, 2007 and February 28, 2007, presented in support of this motion could not
have been presented to the Magistrate Judge because it did not exist prior to his decision.
Accordingly, under the law in this Circuit, the Magistrate Judge's ruling is not even binding on
him because he would be free to consider Plaintiff's motion anew based on new evidence. *See
U.S. v. Tenzer,* 213 F.3d 34, 39 (2d Cir. 2000); *Commer v. McEntee,* 2006 WL 3262494, at *18
(S.D.N.Y. Nov. 9, 2006).

Veeco could not have reviewed and verified its own correction of TurboDisc's accounting records to obtain its required auditor's opinion, and it is not in the business of verifying other companies correction of their accounting records. Therefore, the assertion in the Rein Affidavit that Veeco would not have prepared the Jefferson Wells documents in a form substantially similar to that prepared by Jefferson Wells (February 6, 2007 Parker Decl., Ex. B, Rein Aff.) is a red herring which cannot provide a basis for a claim of work product protection.

As the Court noted, Judge Yanthis based his conclusion that the documents were eligible for work product protection based on the assertion in the Rein Affidavit that <u>Veeco</u> would not have prepared the Jefferson Wells documents in substantially similar form in the ordinary course of business. *In re Veeco Instruments, Inc. Sec. Litig.*, 2007 WL 724555, at *2 (S.D.N.Y. March 9, 2007). The Court affirmed that holding. Inasmuch as Veeco <u>could not</u> review or verify its own correction of TurboDisc's financial records to obtain the necessary opinion of its auditor, the statement in the Rein Affidavit that Veeco would not have prepared a document in a particular form in the ordinary course of its business, when it would not have prepared such a document <u>in any form,</u> cannot provide a basis for that conclusion as to the documents prepared by the Jefferson Wells internal auditors.

2.    THE FACTUAL UNDERPINNINGS FOR THE CLAIM OF WORK PRODUCT PRIVILEGE IN THE REIN AND GREISS AFFIDAVITS ARE CONTRARY TO FACT

In addition, the Court rejected Plaintiff's argument that the assertion about the form of the accounting documents was boiler plate on the grounds that the Rein Affidavit and Greiss Declaration "provided extensive background information based on their own personal knowledge." 2007 WL 72455 at *7. That "extensive background information," however, instead of providing a basis for

3

accepting Defendants' claim of work product protection, bears little or no resemblance to the facts, as follows:

      a)     Rein representation: "During preliminary testing of internal controls at TurboDisc for the purpose of complying with the Sarbanes' Oxley Act, Veeco identified certain remediation items." (February 6, 2007 Parker Decl., Ex. B, Rein Aff. at ¶4)

              Facts: Veeco's Manager of Internal Audit, who was attempting to test TurboDisc internal controls, was frustrated in that effort because he could not obtain necessary documentation from the TurboDisc controller. (Osterwise Decl., Ex. 1, Reifert Dep. Tr. 167:12-20). As the manager noted, and as Defendant Kiernan was aware, the TurboDisc controller was signing off on controls that he had not performed. (Osterwise Decl., Ex. 2)

      b)     Rein representation: Shortly after the "identification of remediation items," Rein instructed Veeco's Manager of Internal Audit to conduct a balance sheet audit of TurboDisc as of September 30, 2004." (February 6, 2007 Parker Decl., Ex. B, Rein Aff. at ¶4)

              Facts:  By July 1, 2004, Defendant Kiernan and Veeco's general counsel knew facts indicating that TurboDisc's financial statements overstated TurboDisc's, and, thereby Veeco's income by $1.4 million. (Osterwise Decl., Ex. 3). Nevertheless, that error was not corrected in the financial statements filed in Veeco's Form 10-Q for the second quarter of 2004.  By the end of the third quarter, three other accounting errors perpetrated by TurboDisc's controller had been discovered, and the TurboDisc Controller was fired.  The net amount of the errors was approximately $1.3 million. (Osterwise Decl., Ex 4). Veeco was able to persuade the Company's auditor, Ernst & Young, that restatement of its financial statement for prior quarters was not required because the Company had over accrued expenses at the corporate level which offset the TurboDisc errors.

(Osterwise Decl., Ex 5) Thus, Veeco knew about TurboDisc accounting errors by the beginning of July 1, 2004, errors kept turning up and Veeco narrowly escaped restatement in the third quarter of the year.

      c)      Rein representations: "On one or more occasions during the period from January 8, 2005 through January 14, 2005, Mr. Reifert [Veeco's Manager of Internal Audit] and Veeco's controller...discussed with me and the chairman of Veeco's Audit Committee...that they had identified potentially improper accounting entries on TurboDisc's balance sheet." (February 6, 2007 Parker Decl., Ex. B, Rein Aff. at ¶5) "Upon receiving that information, I was immediately concerned that the Company might have to restate its financial results in the event that the accounting entries at TurboDisc were determined to be improper." (February 6, 2007 Parker Decl., Ex. B, Rein Aff. at ¶6)

      Facts:  After receiving TurboDisc October 2004 financial results that showed a loss for that month, Veeco's Manager of Internal Audit, Defendant Kiernan and another Veeco accountant expanded the TurboDisc financial review through October 31, 2004, and found more actual, not tentative, TurboDisc errors, in particular, errors involving TurboDisc inventories. They told Defendant Rein about these errors in December 2004 (Osterwise Decl., Ex. 1, Reifert Dep. Tr. 94-97), at which point Rein concluded that a fraud audit should be conducted which involves far more intensive review of underlying facts and documents than the customary audit of a company's financial transactions and records and it is conducted when there is far more than a "suspicion" of errors. (March 1, 2007 Osterwise Decl., Ex. B, Rein Dep. Tr. at 131:2-17).

      That fraud audit was conducted by the Company and required the participation of numerous members of Veeco's accounting staff of various segments of the Company's business --

5

who were required to abandon their customary duties – a well as the participation of the Company's Controller and Vice President of Finance, Manager of Internal Audit, and the Group Controller of the group that included TurboDisc. The Company even hired someone to participate in the activity, and also used the services of a contract internal auditor. (March 1, 2007 Osterwise Decl., Ex. B, Rein Dep. Tr. at 116:9-25; 117:23-25; 118:1-25.) That fraud audit, which was how Veeco chose to correct the many and pervasive errors in TurboDisc's accounting records, was, as Defendants Rein and Kiernan testified <u>conducted by Veeco, was not participated in by Jefferson Wells, and was not part of "the investigation."</u> Thus, <u>Rein knew long before Jefferson Wells was retained that Veeco would be forced to restate its financial statements.</u> Defendants also knew that the TurboDisc Controller made all of the erroneous TurboDisc accounting entries because he was the only person who made TurboDisc accounting entries in the first three quarters of 2004. Thus, the "investigation" was not intended to "investigate" either the extent of the accounting errors or the identity of the person responsible for them.

      d)    Rein representations: Veeco's Audit Committee authorized Kaye Scholer to engage Jefferson Wells to perform "account reconstruction" and Kaye Scholer engaged Jefferson Wells for that purpose. (February 6, 2007 Parker Decl., Ex. B, Rein Aff. at ¶10).

      Facts:  Jefferson Wells was engaged to review and verify the account reconstruction performed by Veeco to obtain the opinion of Veeco's auditor which was needed to file the Company's Form 10-K. (March 1, 2007 Osterwise Decl.)

      Defendants' misrepresentation to the Court about the role of Jefferson Wells is not the first such misrepresentation by Messrs. Rein and Greiss. At the February 4, 2004 Veeco Audit Committee meeting Messrs. Rein and Greiss "reported that Jefferson Wells was actively engaged

6

in assisting corporate financial management to determine the extent of the accounting issues and the amount of the adjustments which might be required." In Defendants' responses to Plaintiff's requests for admission, Defendants admitted that Messrs. Rein and Greiss made that report, however Defendants denied that it was an accurate description of the activities of Jefferson Wells. (Osterwise Decl., Ex. 6 at p. 16-17).

The Greiss Declaration, like the Rein Affidavit, misrepresents the purpose for the engagement of Jefferson Wells (February 6, 2007 Parker Decl., Ex. B, Greiss Decl. at ¶6), and states that the Jefferson Wells reports differ from reports prepared by Veeco in the "normal course of its business" in that they are stamped "privileged and confidential," when Veeco does not prepare reports reviewing or verifying corrections of accounting records performed by others in the normal course of its business.

Thus, far from fleshing out the factual underpinnings for Defendants' claim of work product privilege, stripped of the Rein and Greiss misrepresentations, there is nothing left but boilerplate that Veeco would prepare documents differently in the ordinary course of its business and never in the normal course of business stamped documents "privileged." Further, where, as is here the case, a party's claim of work product protection is based solely on the "form" of the document, except for attorney-created documents such as interview notes, each document requires individual proof that its form would have been substantially different absent the prospect of litigation. The fact that one document may be substantially different does not mean that the form of others would necessarily also be substantially different. This is particularly true where, as is here the case, the documents were prepared in the course of an audit and the review of an audit. There is no such proof in the record in this case.

7

Moreover, Thomas Vollmer, the Jefferson Wells engagement manager, testified that the Jefferson Wells internal auditors were preparing their work to make sure it was done as desired by Ernst & Young, Veeco's auditor. (Osterwise Decl., Ex. 7, Vollmer Dep. Tr. at 50:8 - 51:18). That is not surprising because the purpose of engaging the Jefferson Wells internal auditors was to obtain to opinion of Ernst & Young on the Company's financial statements. Moreover, Ernst & Young has specific standards for the performance of its work, which would apply to the materials it needed from Jefferson Wells to assure themselves that the accounting records had been corrected properly. (Osterwise Decl., Ex. 8, Fredericks Dep. Tr. at 13:8-23). In fact, an Ernst & Young document states that Ernst & Young "reviewed the workpapers of [Jefferson Wells] noting that the work performed was appropriate for concluding that the restated financial statements [for the first three quarters of 2004] are free from material misstatement." (Osterwise Decl., Ex. 6 at p. 17). Thus, the evidence in the record about the form of the Jefferson Wells documents is that the form thereof was determined by Ernst & Young, not by the prospect of litigation.

3.    DEFENDANTS' ASSERTIONS BASED UPON THE FORM OF DOCUMENTS PREPARED BY VEECO IN THE ORDINARY COURSE OF BUSINESS MISCONCEIVE THE ADLMAN TEST FOR WORK PRODUCT PROTECTION

The test for work product protection enunciated in *U.S. v. Adlman*, 134 F.3d 1194 (2d Cir. 1998), is not whether the documents would be prepared in substantially different form in the ordinary course of a company's regularly conducted business absent the prospect of litigation. Rather, the test is whether the form of the documents for the activity in question would be substantially different absent the prospect of litigation. *Id.* at 1202.

Neither the Rein Affidavit nor the Griess Declaration meet the burden defined in *Adlman*.

8

In *Adlman*, the appellate court directed the district court to find that the requested documents were not have been prepared in anticipation of litigation if they "would have been prepared in any event – as part of the <u>ordinary course of business of undertaking the restructuring</u>." *Id.* at 1204. The Rein Affidavit asserts that the documents in question "would not have been prepared by Veeco in the <u>ordinary course of business</u>." Mr. Greiss asserts that he has "never known Veeco to prepare reports or interview memoranda of this type, in substantially similar form, during the <u>normal course of business</u>." Mr. Rein's and Mr. Greiss' statements fail to meet the burden of proof under *Adlman* which directs a court to consider whether documents would be prepared in the ordinary course of business under the given circumstances (a corporate restructuring in *Adlman*). Mr. Rein and Mr. Griess only make assertions about what is "normal" at Veeco and what was done during Veeco's general ordinary course of business. However, when the requested documents were created, Veeco was conducting a fraud audit, which is certainly not a part of the normal, day-to-day operations of Veeco or TurboDisc. Therefore, Mr. Rein's and Mr. Greiss' statements are essentially truisms because Veeco was conducting an unusual audit when the documents were created. However, in order to meet the *Adlman* standard, Defendants must demonstrate that Veeco would not have prepared the requested documents "in any event – as a part of the ordinary course of business of <u>undertaking</u>" the fraud audit. Defendants have not and cannot make such a showing.

Thus, to establish work product protection Defendants would have to prove (a) as to the Veeco prepared documents that the form of each of them was substantially different than would have been the case <u>in a fraud audit</u> due to the prospect of litigation; (b) as to the Jefferson Wells review and verification documents that each of them was substantially different due to the prospect of litigation, not because Veeco would have prepared them, substantially differently. Moreover, there

9

should be at least some factual basis for the assertion that there were litigation related substantial differences in form. That is particularly true where the Court does not examine any of the documents.

Plaintiff has seen some of the purportedly privileged documents because they were inadvertently produced, but cannot describe their contents due to the constraints of the Confidentiality Order entered in this action. However, Plaintiff suggests that the Court ask Defendants to produce and examine Document No. VECO 0097957, a Jefferson Wells prepared document, *in camera*. Plaintiff believes that document would be a helpful example of the Jefferson Wells internal auditors documents, and demonstrate that Defendants' work product claims are baseless.

4.    PLAINTIFF HAS SUBSTANTIAL NEED FOR THE DOCUMENTS BECAUSE THE INFORMATION CONTAINED THEREIN CANNOT POSSIBLY BE OBTAINED THROUGH DEPOSITIONS OR INTERROGATORIES

Contrary to the Court's decision, Plaintiff does not have access to substantially, or even reasonably, comparable evidence. Witnesses have been available for deposition, which has served to demonstrate this fact. Several factors make it nearly impossible to obtain the information sought through depositions or interrogatories. First, the details about the multitudinous TurboDisc accounting errors, the amounts thereof, when and how they were discovered and their correction cannot be elicited though deposition questioning or through interrogatories. Those errors were detected by Veeco over an extended period, including a three month fraud audit which included the work of many Veeco accounting personnel, each of whom would have to be deposed by Plaintiff and none of whom would remember any details. Second, not only does Plaintiff face the challenge of witnesses that do not remember key facts about dozens of transactions that occurred several years

including that Defendants were always aware that TurboDisc controller Bruce Huff was unqualified for his positions, that the TurboDisc accounting department was understaffed, that all of the people responsible for the management of accounting Veeco and the operations manager at TurboDisc believed that Mr. Huff was a liar, and that Defendants had found serious accounting errors and started a fraud audit prior to the "investigation." However, Defendants unleashed a Frankenstein and are now trying to withhold the evidence of the consequences of their recklessness -- specifically evidence that demonstrates that it was the facts that they knew about Mr. Huff, the understaffed TurboDisc accounting department and the deficient TurboDisc internal controls that caused the accounting errors at TurboDisc. Documents produced by Defendants show that they knew that internal controls at TurboDisc were not being performed, and they admitted in connection with their 2004 10-k that a lack of internal controls caused the restatement, yet they continue to shield the documents that will show that it was these specific deficient controls, which they had knowledge about during the class period, that caused the restatement.

## CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court grant its motion for partial reconsideration and order Defendants to produce documents as contemplated in this motion.

Dated: March 26, 2007                    BERGER & MONTAGUE, P.C.

By:    *Carole Broderick*

12

Sherrie R. Savett
Carole A. Broderick
Phyllis M. Parker
Jeffrey L. Osterwise
Shoshana T. Savett
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4674

***Lead Counsel for Lead Plaintiff and the
Class***

13